IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| ECHO ENERGY PARTNERS I, LLC | ) Case No. 20-31920 (DRJ) |
| | ) |
| Debtor. | ) |
| | ) |
| ------------------------------------------------------------ | ) |
| | ) |
| BRIAN CRISP, as Plan Administrator for the Reorganized Debtor Echo Energy Partners I, LLC, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Proc. No. |
| v. | ) _____ |
| | ) |
| ECHO INVESTMENT PARTNERS, LLC; HPS INVESTMENT PARTNERS, LLC; MEZZANINE PARTNERS III, L.P.; MP III OFFSHORE MEZZANINE INVESTMENTS, L.P.; AP MEZZANINE PARTNERS III, L.P.; OFFSHORE MEZZANINE PARTNERS III CO-INVEST, L.P.; SANDLAPPER CREDIT FUND, L.P.; JADE REAL ASSETS FUND, L.P., JOHN AND JANE DOES 1 THROUGH 100, JOHN DOE CORPORATIONS 1 THROUGH 20, and JOHN DOE ENTITIES 1 THROUGH 20, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | |

---

**COMPLAINT**

1.  Brian Crisp, solely in his capacity as Plan Administrator (the "***Plan Administrator***" or "***Plaintiff***") of reorganized debtor Echo Energy Partners I, LLC ("***EEPI***" or "***Debtor***"), by and through his undersigned counsel, files this complaint (the "***Complaint***") against Echo Investment Partners, LLC; HPS Investment Partners, LLC; Mezzanine Partners III, L.P.; MP III Offshore Mezzanine Investments, L.P.; AP Mezzanine Partners III, L.P.; Offshore Mezzanine Partners III

1

Co-Invest, L.P.; Sandlapper Credit Fund, L.P.; Jade Real Assets Fund, L.P., John and Jane Does 1 through 100, John Doe Corporations 1 through 20, and John Doe Entities 1 through 20 (collectively, "*Defendants*") to avoid and recover fraudulent transfers and to disallow any claims held by Defendants. In support of this Complaint, Plaintiff hereby alleges as follows:

## I.   NATURE OF THE CASE

1. This lawsuit arose because Defendant Echo Investment Partners, LLC ("*EIP*") – the parent company of the Debtor – caused the Debtor to make distributions of more than $24 million to EIP, which EIP then used to pay its own creditors – to the ultimate harm of the Debtor and the Debtor's creditors.

2. Debtor obtained a loan from Texas Capital Bank ("*Texas Capital*") in January 2018. Shortly thereafter, beginning in February 2018, EIP siphoned funds from the Debtor, its wholly owned subsidiary, to repay debts EIP owed to its own creditors led by private equity firm HPS Investment Partners, LLC ("*HPS*"). EIP's siphoning of the Debtor's assets for HPS's benefit lasted through July 2019 – at which point Texas Capital required the Debtor to provide it with control agreements to prevent further drainage of the Debtor's assets.

3. But by that point the damage was irreversible. The Debtor's final distribution of some $4.27 million to EIP was made while the Debtor was insolvent, unable to pay its debts as they became due, and severely lacking in working capital. As it had previously, EIP used this ill-gotten transfer to repay its own debts to HPS entities, while the Debtor's creditors went unpaid.

4. Ultimately, the Debtor filed for bankruptcy protection under Chapter 11. An HPS-affiliated entity acquired a significant portion of the Debtor's assets through the bankruptcy, but the Debtor's creditors have yet to be fully repaid.

5. The Plan Administrator seeks to avoid and recover as a fraudulent transfer the Debtor's transfer of some $4.27 million to Defendants, pursuant to the Bankruptcy Code and

2

Texas Uniform Fraudulent Transfer Act. Additionally, the Trustee seeks to recover pre- and post-judgment interest, costs, and reasonable and necessary attorney's fees provided for under the law.

## II. JURISDICTION AND VENUE

6. The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Court***") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

7. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2) and this Court may enter a final order consistent with Article III of the United States Constitution.

8. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409(a). This adversary proceeding is related to the Chapter 11 bankruptcy case that is pending in this district under the caption *In re Echo Energy Partners I, LLC.*, Case No. 20-31920 (the "***Bankruptcy Case***"). Further, venue is proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District.

9. The statutory predicates for the relief sought herein are sections 502, 544, 548 and 550 of title 11 of the United States Bankruptcy Code (the "***Bankruptcy Code***") and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

10. Pursuant to Federal Rule of Bankruptcy Procedure 7008, The Plan Administrator states that he hereby consents to the Bankruptcy Court's entry of final orders and judgment in this adversary proceeding.

## III. PROCEDURAL BACKGROUND

11. On March 24, 2020 (the "***Petition Date***"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

12. On September 30, 2020, the Court confirmed the Debtor's Chapter 11 Plan of Liquidation, pursuant to which the Court also authorized the Plan Administrator to take any action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, without further order of the Court.

13. The section 341 meeting of the creditors was held and concluded on May 1, 2020.

**IV.     THE PARTIES**

14. Plaintiff Brian Crisp is the duly appointed Plan Administrator of Reorganized Debtor Echo Energy Partners I, LLC. Plaintiff maintains an office at Lain, Faulkner & Co., P.C., 400 N. St. Paul, Suite 600, Dallas, TX 75201.

15. Reorganized Debtor Echo Energy Partners I, LLC is a Delaware limited liability company formed on November 29, 2017, with its principal place of business located at 400 N. St. Paul, Suite 600, Dallas, TX 75201.

16. Defendant EIP is a Delaware limited liability company formed on November 29, 2017, with its principal place of business located at 120 Robert S. Kerr Avenue, Suite 701, Oklahoma City, OK 73102. EIP may be served pursuant to Rule 7004(b)(1) by sending a copy of the summons and complaint to its registered agent for service of process, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. EIP was formed to be the sole member of the Debtor.

17. Defendant HPS is a Delaware limited liability company with its principal place of business located at 40 West 57th Street, 33rd Floor, New York, NY 10019. HPS may be served pursuant to Rule 7004(b)(1) by sending a copy of the summons and complaint to its registered

agent for service of process, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

18. Defendant Mezzanine Partners III, L.P. ("*Mezz III*") is a Delaware limited partnership with its principal place of business located at 40 West 57th Street, 33rd Floor, New York, NY 10019. Mezz III may be served pursuant to Rule 7004(b)(1) by sending a copy of the summons and complaint to its registered agent for service of process, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

19. Defendant MP III Offshore Mezzanine Investments, L.P. ("*MP III Offshore*") is a Cayman Islands limited partnership with its principal place of business located at 40 West 57th Street, 33rd Floor, New York, NY 10019. MP III Offshore may be served pursuant to Rule 7004(b)(3) by sending a copy of the summons and complaint to the attention of HPS Mezzanine Management III, LLC, the investment manager for MP III Offshore, to its registered agent for service of process, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, and by mailing a copy to MP III Offshore at 40 West 57th Street, 33rd Floor, New York, NY 10019.

20. Defendant AP Mezzanine Partners III, L.P. ("*AP Mezz*") is a Delaware limited partnership with its principal place of business located at 40 West 57th Street, 33rd Floor, New York, NY 10019. AP Mezz may be served pursuant to Rule 7004(b)(1) by sending a copy of the summons and complaint to its registered agent for service of process, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

21. Defendant Offshore Mezzanine Partners III Co-Invest, L.P. ("*Offshore Co-Invest*") is a Cayman Islands limited partnership with its principal place of business located at 40 West 57th Street, 33rd Floor, New York, NY 10019. Offshore Co-Invest may be served pursuant to Rule 7004(b)(3) by sending a copy of the summons and complaint to the attention of HPS

Mezzanine Management III, LLC, the investment manager for Offshore Co-Invest, to its registered agent for service of process, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, and by mailing a copy to Offshore Co-Invest at 40 West 57th Street, 33rd Floor, New York, NY 10019.

22. Defendant Sandlapper Credit Fund, L.P. ("***Sandlapper***") is a Delaware limited partnership with its principal place of business located at 40 West 57th Street, 33rd Floor, New York, NY 10019. Sandlapper may be served pursuant to Rule 7004(b)(1) by sending a copy of the summons and complaint to its registered agent for service of process, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

23. Defendant Jade Real Assets Fund, L.P. ("***Jade***") is a Delaware limited partnership with its principal place of business located at 40 West 57th Street, 33rd Floor, New York, NY 10019. Jade may be served pursuant to Rule 7004(b)(1) by sending a copy of the summons and complaint to its registered agent for service of process, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

24. Upon information and belief, Defendants John and Jane Does 1 through 100 (the "***John and Jane Doe Defendants***") are individuals whose names and addresses of residences are unknown.

25. Upon information and belief, Defendants John Doe Corporations 1 through 20 (the "***Doe Corporations***") are corporations, the names and addresses of residences of which are unknown.

26. Upon information and belief, Defendants John Doe Entities 1 through 20 (the "***Doe Entities***") are other legal entities, the names and addresses of residences of which are unknown.

27. Collectively, the John and Jane Doe Defendants, the Doe Corporations, and the Doe Entities are referred to herein as the "***Doe Defendants***."

## V. FACTUAL BACKGROUND

28. Defendant EIP was the sole owner and sole member of the Debtor. Debtor owned interests in certain oil and gas properties and related assets (the "***Properties***") in Oklahoma. On January 19, 2018, the Debtor entered a Services Agreement with affiliates Echo E&P, LLC and Echo Energy, LLC, pursuant to which Echo E&P, LLC and Echo Energy, LLC would operate the Properties, maintain lease records and owner accounts relating to the Properties, market and sell hydrocarbons produced from the Properties, and provide all general and administrative services necessary for the conduct of Debtor's business to Debtor.

### A. The HPS Lenders loan $150 million to Debtor's parent company, EIP.

29. On or around January 19, 2018, Defendant HPS, as the administrative agent, entered into a Note Purchase Agreement with EIP, pursuant to which Defendants Mezz III, MP III Offshore, AP Mezz, Offshore Co-Invest, Sandlapper, and Jade (collectively, the "***HPS Lenders***") lent $150 million to Debtor's parent company, EIP (the "***HPS Loan***"). EIP pledged its 100% ownership in the Debtor as part of the security for the HPS Loan.

30. On January 19, 2018, the Debtor entered a credit agreement ("***TCB Credit Agreement***") with Texas Capital Bank, National Association ("***Texas Capital***"), pursuant to which certain lenders agreed to make revolving credit loans (the "***TCB Loan***") to Debtor, and Texas Capital agreed to act as the administrative agent for the TCB Loan. Pursuant to the TCB Credit Agreement, Texas Capital and MidFirst Bank made revolving credit loans totaling $80 million to the Debtor.

31. The following chart shows the loans and relationships between the parties to the various loan agreements:



32. The TCB Credit Agreement required the Debtor to certify on a quarterly basis, beginning with the fiscal quarter ending March 31, 2018, whether it was in compliance with certain loan covenants requiring the "*Current Ratio*" of the Debtor – i.e., Current Assets divided by Current Liabilities – to be greater than 1.00 (the "*Loan Covenants*"). A Current Ratio of 1.00 or more indicates that a company has sufficient net working capital to pay its current debts with current assets; a Current Ratio below 1.00 indicates that a company has a net working capital deficit.

33. Almost immediately following Texas Capital's loan to the Debtor, EIP began siphoning money from the Debtor to pay the interest and principal owed on the HPS Loan, as well as other fees related to the HPS Loan. From February 28, 2018, through December 31, 2018, EIP caused the Debtor to distribute almost $15.9 million to EIP for these purposes.

### B. EIP invests an additional $14.75 million – loaned by HPS – to obtain a clean audit opinion.

34. EIP's slow siphoning of the Debtor's funds to repay the HPS Loan soon led to the Debtor being out of compliance with the Loan Covenants for the TCB Loan. Mere days before the end of the fourth quarter of 2018, on December 27, 2018, the Debtor transferred some $4.3 million to EIP to be used for principal and interest payments on the HPS Loan. For the quarter ending December 31, 2018, the Debtor's Current Ratio was 0.77 – less than the 1.00 minimum required. In fact, beginning at least as early as December 31, 2018, the Debtor had a net working capital deficit of some $6.8 million dollars.

35. The Debtor's Current Ratio fell throughout the first quarter of 2019, indicating a continuous net working capital deficit. Again, mere days before the end of the first quarter of 2019, on March 27, 2019, the Debtor transferred some $4 million to EIP to be used for principal and interest payments on the HPS Loan. By March, 31, 2019, the Debtor's Current Ratio had significantly deteriorated – falling to 0.48. At that point, the Debtor's net working capital deficit had increased to more than $17.5 million. On April 18, 2019, EIP made a capital contribution of $10 million to the Debtor, which lowered the net working capital deficit to $6.8 million. Yet the Debtor's Current Ratio remained below 1.00 throughout May 2019, and by May 31, 2019, its net working capital deficit had again increased to $9.5 million.

36. The TCB Credit Agreement also required the Debtor to timely deliver to Texas Capital its audited annual financial statements for the fiscal year ended December 31, 2018 within 120 days of the fiscal year-end. However, the Debtor failed to provide the December 31, 2018 audited financials in a timely matter. On information and belief, the auditors would not issue a clean audit opinion since the Debtor was in violation of the Loan Covenants pertaining to the Current Ratio on December 31, 2018 and March 31, 2019 (and at all points in between).

37. To remedy the issue and obtain a clean audit opinion for the Debtor, on Wednesday, June 5, 2019, Defendant EIP, the HPS Lenders, and Defendant HPS (as the administrative agent) entered into a First Amendment to Note Purchase Agreement, pursuant to which the HPS Lenders increased the amount of their loan to EIP by $15 million. Almost immediately, EIP used this inflow to make an equity contribution to the Debtor in order to attempt bring the Debtor into closer compliance with the Loan Covenants and obtain a clean audit opinion. Thus, on Thursday, June 6, 2019, EIP made a capital contribution of $6.25 million to the Debtor, and on Friday, June 7, 2019, EIP made a capital contribution of some $8.5 million to the Debtor.

38. The very next business day – Monday, June 10, 2019 – the Debtor's auditors issued a clean audit opinion for the Debtor for the year ending December 31, 2018. The audit opinion emphasized that the Debtor had significant transactions with related parties. The notes to the audited financial statements provide:

> The Company was not in compliance with several covenants of the [TCB Credit] Agreement at December 31, 2018 and at March 31, 2019.
>
> On June 6, 2019, the banks agreed to waive compliance with these covenants at December 31, 2018 and at March 31, 2019. ***Management believes the Company will be in compliance with all covenants of the Agreement through at least December 31, 2019.***[1]

39. The TCB Credit Agreement also required the Debtor to deliver quarterly financial statements and compliance certificates to Texas Capital within 60 days of each quarter-end. In addition to failing to timely deliver the year-end audited financials, the Debtor also failed to deliver the quarterly financial statements for the first quarter of 2019 ("1Q2019") and failed to timely deliver compliance certificates for the fourth quarter of 2018 ("4Q2018") and 1Q2019.

40. Indeed, the Debtor did not provide its compliance certificates for 4Q2018 and 1Q2019 until June 12, 2019. The compliance certificates showed Current Ratios of 0.77 for

---

[1] (Emphasis added).

4Q2018 and 0.48 for 1Q2019. On June 14, 2019, the Debtor provided an amended compliance certificate for 1Q2019, showing its current assets equaled exactly its current liabilities, for a Current Ratio of 1.00. However, by June 30, 2019, the Debtor's Current Ratio had once again fallen below the 1.00 minimum – to 0.90 – due to the Debtor's net working capital deficit of some $2.2 million.

### C. As the result of EIP's additional equity contribution in June 2019, Texas Capital and MidFirst waive defaults arising from Debtor's failure to timely deliver audited financials and compliance certificates.

41. On June 6, 2019, Texas Capital and MidFirst agreed to waive certain defaults caused by the Debtor's failure to timely deliver year-end and quarterly financials and compliance certificates. As conditions for the waiver, Texas Capital, MidFirst, and the Debtor agreed that:

   a. By June 13, 2019, Debtor would have "received at least $15,000,000 in new cash equity contributions as common equity interests;"

   b. By June 13, 2019, Debtor would have "eliminated all of its accounts payable aged more than sixty (60) days;"

   c. By June 20, 2019, Debtor would have provided its audited financial statements for the fiscal year ending December 31, 2018 to Texas Capital; and

   d. Debtor would have paid Texas Capital a non-refundable waiver fee of $40,000.

42. Texas Capital's requirements came too little, too late. Despite EIP's addition of new capital of nearly $15 million in June 2019, monthly balance sheet reports show that the Debtor remained undercapitalized throughout the entirety of 2019:

| Date | Current Assets | Current Liabilities | Current Ratio | Net Working Capital |
|---|---|---|---|---|
| 12/31/2018 | $ 22.9 million | $ 29.8 million | 0.77 | $ (6.9 million) |
| 1/31/2019 | $ 21.3 million | $ 31.5 million | 0.67 | $ (10.3 million) |
| 2/28/2019 | $ 18.6 million | $ 30.4 million | 0.61 | $ (11.9 million) |
| 3/31/2019 | $ 15.6 million | $ 33.2 million | 0.47 | $ (17.6 million) |
| 4/30/2019 | $ 17.5 million | $ 24.3 million | 0.72 | $ (6.9 million) |
| 5/31/2019 | $ 18.9 million | $ 28.4 million | 0.67 | $ (9.5 million) |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/30/2019 | $ | 20.6 million | $ | 22.8 million | 0.90 | $ | (2.2 million) |
| 7/31/2019 | $ | 14.3 million | $ | 26.3 million | 0.54 | $ | (12.0 million) |
| 8/31/2019 | $ | 15.9 million | $ | 29.1 million | 0.55 | $ | (13.2 million) |
| 9/30/2019 | $ | 15.5 million | $ | 30.8 million | 0.50 | $ | (15.3 million) |
| 10/31/2019 | $ | 13.8 million | $ | 32.6 million | 0.42 | $ | (18.7 million) |
| 11/30/2019 | $ | 14.2 million | $ | 35.1 million | 0.40 | $ | (20.9 million) |
| 12/31/2019 | $ | 10.5 million | $ | 35.0 million | 0.30 | $ | (24.5 million) |

### D. The Debtor makes a distribution of $4.27 million to EIP.

43. Almost immediately after Debtor received equity contributions on June 6 and 7, 2019 of almost $15 million from EIP, the Debtor transferred some $9.86 million to related party operator Echo E&P, LLC (on June 7 and 10, 2019). And roughly three weeks later, on July 2, 2019, the Debtor transferred $4,271,666.67 to EIP by wire transfer from the Debtor's account ending in number 6684 at a time when the Debtor already had a net working capital deficit and owed one of its key creditors, Continental Resources Inc. ("***Continental***"), over $4.75 million, having not paid Continental at all since March. This distribution to EIP – the Debtor's parent – was not made for reasonably equivalent value.

44. EIP used the transfer payment to make its principal and interest payment to HPS as the administrative agent on the HPS Loan paying the HPS Lenders for the second quarter of 2019. On information and belief, HPS distributed these Debtor funds to the HPS Lenders in accordance with their relevant allocation under the HPS Note Purchase Agreement:

| HPS Lender | Allocation |
|---|---|
| Mezz III | 21.84% |
| MP III Offshore | 50.60% |
| AP Mezz | 8.94% |
| Offshore Co-Invest | 11.62% |
| Sandlapper | 3.50% |
| Jade | 3.50% |

On information and belief, the HPS Lenders distributed these Debtor funds to the Doe Defendants pursuant to the HPS Lenders' governing documents or other distribution agreements.

45. At the time of the transfer, the Debtor was insolvent or became insolvent as a result thereof because it was undercapitalized as well as not paying its debts as they came due. For example, as of March 28, 2019, the Debtor owed creditor Continental – which operated a portion of the Properties – at least $256,000. By June 30, 2019, the Debtor's debt to Continental had increased to more than $4.75 million, and by August 31, 2019, the debt to Continental was more than $12.7 million. Yet between March and August 2019, while its debts to Continental increased by nearly $12.5 million, the Debtor made *no* payments to Continental – electing instead to transfer $24.3 million to related party operator Echo E&P, LLC[2] and $4.27 million to parent EIP. Indeed, from June 30, 2019 to August 31, 2019, the Debtor's accounts payable to non-related creditors increased by $10.8 million – from $6.2 million to $17 million.

46. Additionally, at the time of the $4.27 million transfer to EIP, the Debtor was insolvent or became insolvent as a result thereof because it possessed unreasonably small capital. Although the Debtor represented to Texas Capital on June 14, 2019 that its Current Ratio was 1.00 for 1Q2019, by June 30, 2019 – just two days before the transfer to EIP – the Debtor again had a Current Ratio of 0.90 and a net working capital deficit of some $2.2 million.

47. Indeed, by July 31, 2019 – less than a month after the $4.27 million transfer to EIP – the Current Ratio had plunged to roughly 0.54 and the net working capital deficit rose to roughly $12 million, and by the end of the third quarter of 2019 the Debtor's Current Ratio had dropped even further, causing the Debtor to disclose to Texas Capital that:

> Borrower will be unable to pay all liabilities of Borrower as such liabilities mature. . . .Without an improvement in liquidity or a disposition of assets, Borrower will have insufficient cash on hand to satisfy all accounts payable as such sums become due.

---

[2] Echo E&P, LLC, an operator of certain Properties of the Debtor, is owned 100% by Christian Kanady, who owns approximately 20% of the interests in the Debtor's parent company, EIP.

Additionally, from June 30, 2019 to July 31, 2019, the Debtor's accrued interest payable increased from zero to $7.96 million.

48.     The Debtor eventually recognized impairments of its assets in the third quarter of 2019 of some $54.6 million and in the fourth quarter of 2019 of some $8.8 million. During these periods, the Debtor also wrote down other assets by nearly $11.5 million. By September 30, 2019, HPS had assumed control of the voting power of EIP and amended the LLC agreement of the Debtor to allow HPS to appoint the sole manager of the Debtor.

49.     Ultimately, the Debtor filed its Chapter 11 bankruptcy petition on March 24, 2020. On July 2, 2020 – exactly one year after Debtor made its $4.27 million transfer to EIP – the Court approved sale of the Debtor's oil and gas properties to operators Continental and Marathon Oil Company (for credit bids) and to MP III Echo, LLC – an affiliate of HPS and the HPS Lenders.

VI.     **CAUSES OF ACTION**

**COUNT #1**
**AVOIDANCE AND RECOVERY OF PREPETITION TRANSFERS**
**PURSUANT TO 11 U.S.C. §§ 548(a)(1)(B) AND 550(a)**

50.     The Plan Administrator repeats and re-alleges each and every allegation previously set forth in this Complaint as if fully set forth herein.

51.     The Plan Administrator seeks to avoid the following fraudulent transfer (the "***Fraudulent Transfer***") and recover the value of such transfer from any initial, immediate, and/or mediate transferees: $4,271,666.67 of funds transferred to EIP by wire transfer from the Debtor's account ending in number 6684 on July 2, 2019.

52.     The Fraudulent Transfer was a "transfer" within the definition of 11 U.S.C. § 101(54)(D)(i) or (ii).

53.     The Fraudulent Transfer occurred within two (2) years of the Petition Date.

14

54. The Fraudulent Transfer was a transfer of property, or of an interest in property, of the Debtor to and/or for the benefit of one or more of the Defendant transferees.

55. As more particularly set forth above, the Debtor did not receive reasonably equivalent value in exchange for the Fraudulent Transfer.

56. As more particularly set forth above, the Fraudulent Transfer was made at a time when the Debtor was insolvent (or rendered insolvent as a result of the Fraudulent Transfer), had unreasonably small capital, and/or had incurred (or intended to incur) debts beyond its ability to pay as such debts matured.

57. Accordingly, the Fraudulent Transfer constitutes an avoidable fraudulent transfer pursuant to Section 548(a)(1)(B) of the Bankruptcy Code.

58. As more particularly set forth above, Defendant EIP was the initial transferee of the Fraudulent Transfer, or the entity for whose benefit the Fraudulent Transfer was made, or, alternatively, the immediate or meditate transferee of such initial transferee.

59. As more particularly set forth above, Defendant HPS was the entity for whose benefit the Fraudulent Transfer was made, or the immediate or meditate transferee of the initial transferee of the Fraudulent Transfer.

60. As more particularly set forth above, Defendants the HPS Lenders were the entities for whose benefit the Fraudulent Transfer was made, or the immediate or meditate transferees of the initial transferee of the Fraudulent Transfer.

61. As more particularly set forth above, the Doe Defendants were the entities for whose benefit the Fraudulent Transfer was made, or the immediate or meditate transferees of the initial transferee of the Fraudulent Transfer.

62. Accordingly, the Plan Administrator is entitled to recover the Fraudulent Transfer or its value pursuant to Section 550 of the Bankruptcy Code.

## COUNT #2
## AVOIDANCE AND RECOVERY OF PREPETITION TRANSFERS
## PURSUANT TO TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(2) and
## 24.006(a) and 11 U.S.C. §§ 544(b)(1) AND 550(a)

63. The Plan Administrator repeats and re-alleges each and every allegation previously set forth in this Complaint as if fully set forth herein.

64. At all times material thereto, the Debtor had at least one creditor prior to making the above-described Fraudulent Transfer.

65. The Fraudulent Transfer was a transfer of property, or of an interest in property, of the Debtor to and/or for the benefit of one or more of the Defendant transferees.

66. As more particularly set forth above, the Debtor did not receive reasonably equivalent value in exchange for the Fraudulent Transfer.

67. As more particularly set forth above, the Fraudulent Transfer was made at a time when the Debtor was insolvent (or was rendered insolvent as a result of the Fraudulent Transfer) and was generally not paying its debts as they came due as a result of liquidity problems and working capital deficits plaguing the Debtor.

68. Accordingly, the Fraudulent Transfer is voidable under Sections 24.005(a)(2) and 24.006(a) of the Texas Business and Commerce Code, and Section 544 of the Bankruptcy Code.

69. As more particularly set forth above, Defendant EIP was the initial transferee of the Fraudulent Transfer, or the party for whose benefit the Fraudulent Transfer was made, or, alternatively, the immediate or mediate transferee of such initial transferee.

70. As more particularly set forth above, Defendant HPS was the entity for whose benefit the Fraudulent Transfer was made, or the immediate or meditate transferee of the initial transferee of the Fraudulent Transfer.

71. As more particularly set forth above, Defendants the HPS Lenders were the entities for whose benefit the Fraudulent Transfer was made, or the immediate or meditate transferees of the initial transferee of the Fraudulent Transfer.

72. As more particularly set forth above, the Doe Defendants were the entities for whose benefit the Fraudulent Transfer was made, or the immediate or meditate transferees of the initial transferee of the Fraudulent Transfer.

73. Accordingly, the Plan Administrator is entitled to recover the Fraudulent Transfer or its value pursuant to Section 550 of the Bankruptcy Code.

## PRAYER

WHEREFORE, Plaintiff Brian Crisp, solely in his capacity as Plan Administrator for the Reorganized Debtor Echo Energy Partners I, LLC, demands judgment against the Defendant as follows:

   A.   All damages, actual and consequential, sustained by the Debtor as a result of the conduct of the Defendants described above;

   B.   Avoiding the Fraudulent Transfer pursuant to 11 U.S.C. § 548(a);

   C.   Avoiding the Fraudulent Transfer pursuant to Texas Business and Commerce Code §§ 24.005 and 24.006 and 11 U.S.C. § 544;

   D.   Recovery of the monetary value of the Fraudulent Transfer, plus interest pursuant to 11 U.S.C. § 550(a);

   E.   Costs and reasonable attorneys' fees pursuant to Texas Business and Commerce Code § 24.013;

   F.   Pre-judgment and post-judgment interest as allowed by law; and

   G.   For such other and further relief as the Court deems just and proper.

Date: March 23, 2022                    Respectfully submitted,

                                                                                DANIELS & TREDENNICK, PLLC

                                                                                By:*/s/ Andrea L. Kim*
                                                                                       Andrea L. Kim
                                                                                       Texas State Bar No. 00798327
                                                                                       andrea@dtlawyers.com
                                                                                       Rebecca A. Muff
                                                                                       Texas State Bar No. 24083533
                                                                                       rebecca@dtlawyers.com
                                                                                       6363 Woodway Dr., Suite 700
                                                                                       Houston, Texas 77057
                                                                                       (713) 917-0024 (Telephone)
                                                                                       (713) 917-0026 (Facsimile)

                                                         **COUNSEL FOR BRIAN CRISP AS
                                                         PLAN ADMINISTRATOR FOR
                                                         REORGANIZED DEBTOR ECHO ENERGY
                                                         PARTNERS I, LLC**